UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05-CV-445-H

INTEGRATED COMMUNICATIONS                                    PLAINTIFF
CORPORATION

V.

THOMAS M. DUDDY, DESIGNATED                                  DEFENDANTS
PERSON ON BEHALF OF THE CONSOLIDATED
ESTATES OF LIGHTYEAR HOLDINGS, INC., et al.

**MEMORANDUM OPINION**

This matter is before the Court on appeal from the bankruptcy proceedings involving

Lightyear Holdings, Inc., Lightyear Communications, Inc., Lightyear Telecommunications,

LLC, and Lightyear Communications of Virginia, Inc., collectively referred to as "Lightyear" or

the "Debtors."  Integrated Communications Corporation ("ICC") filed this appeal following the

Bankruptcy Court's denial of ICC's Motion for an Order (A) Compelling the Debtors to Abide

by the Stipulation and Agreed Order Between Debtors and ICC, Immediately Requiring the

Debtors To Make Payment Under the Contract; (B) In the Alternative to Immediately Pay ICC's

Administrative Claim; and (C) Holding Debtors and Debtors' Counsel in Contempt For Their

Failure to Abide By This Court's Orders and Directives (the "ICC Motion"). For the following

reasons, the Court affirms the Bankruptcy Court's decision in its entirety.

I.

The case stems from a contract entered into by Lightyear Communications, Inc.

(formerly known as UniDial Communications, Inc.) and ICC on February 22, 1999 (the

"Contract").  The events surrounding the Contract and the subsequent court proceedings are quite complicated.  Nevertheless, a recitation is necessary to a discussion of the legal issues on appeal.

Under the Contract, ICC marketed the telecommunication services of Lightyear Communications for sale to end-users, and in exchange received sixteen percent of the aggregate revenue generated by the end-users plus a portion of the monthly recurring fee charged to end-users. The parties performed under the Contract without incident until July 2002, when Lightyear ceased making payments. On April 10, 2002, an involuntary petition for relief was filed against Lightyear Holdings pursuant to Chapter 7 of the Bankruptcy Code. On April 29, 2002, Lightyear Communications, Lightyear Telecommunications, and Lightyear Communications of Virginia filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, and Lightyear Holdings consented to the entry of an order for relief and requested that its case be converted to a case under Chapter 11, which request was granted on May 2, 2002.

On September 6, 2002, Lightyear filed a motion to reject the Contract (the "Rejection Motion") pursuant to section 365 of the Bankruptcy Code. ICC filed an Objection to the Rejection Motion on October 4, 2002, to which Lightyear replied on October 17, 2002. On October 21, 2002, the Bankruptcy Court held a hearing on the Rejection Motion, in which it held from the bench that Lightyear was required to pay ICC its past due and ongoing commission payments, but otherwise allowed the Contract to be rejected. Following the hearing, the Bankruptcy Court entered a notation on the case docket that required ICC and the Debtors to tender an order on the Rejection Motion, which apparently never occurred. On October 31, 2002, ICC filed a motion for clarification on the Bankruptcy Court's October 22 ruling, to which

2

Lightyear responded on November 29, 2002. The Bankruptcy Court held a hearing on the motion

for clarification on December 2, 2002, in which it stated:

> [I]f it needs clarification, the court is simply going to reiterate that . . . the debtor
> is authorized to reject the contract and that the impact of rejection, the effect of
> rejection, any damages to be determined, will be subject to a later hearing. So I
> don't know if that clarifies it, but that's the order of the court. The contract is
> rejected, period.

The Bankruptcy Court again made a notation on the docket that counsel for the Debtors was to

"file" a "tendered order" on the Rejection Motion; however, no such order was filed.

On January 23, 2003, ICC filed an Application for Administrative Expenses (the

"Administrative Claim Motion") seeking payment of amounts in arrears and all future amounts

allegedly owed under the Contract. Prior to a hearing on this motion, ICC and the Debtors agreed

to submit the dispute to mediation. The Bankruptcy Court assigned this matter to the Honorable

Thomas H. Fulton, United States Bankruptcy Judge for the Western District of Kentucky, for the

purpose of conducting a mediation of the dispute. On March 26, 2003, Judge Fulton conducted a

mediation in which the parties agreed to the terms of a Stipulation and Agreed Order ("SAAO")

entered by the Court on April 1, 2003. The SAAO ordered the following:[1]

> A. The Rejection Motion is hereby withdrawn by the Debtors, and except as
> provided by this Stipulation and Agreed Order, the terms and conditions of the
> Contract shall hereby remain in full force and effect.
> B. The Motion for Allowance of Administrative Claim is completely and fully
> resolved pursuant to the terms of this Stipulation and Agreed Order, subject to the
> satisfaction of the terms of this Stipulation and Agreed Order, and accordingly is
> hereby withdrawn by ICC. [ ]

---

[1]  For additional context, the Court notes that section 6 of the SAAO roughly parallels the text of the order but
provides slightly different wording.  Section 6.a. states:  "The Debtors agree to withdraw the Rejection Motion and
further agree that the Contract is an executory contract that is not now rejected, nor was the Contract previously
rejected."  Section 6.b. states:  "ICC agrees to withdraw its Motion for Allowance of Administrative Claim."
Section 6.f. states:  "The Debtors and ICC agree that although the Contract is an executory contract, the Debtors will
not seek to reject the Contract."

E. The Debtors shall pay to ICC, on a going forward basis, the amounts properly
due under the Contract as and when such amounts come due, including any grace
period provided under the Contract.
F. The Contract is hereby held to be an executory contract within the meaning of
section 365 of the Bankruptcy Code and that the Debtors will not move to reject
the Contract.

Lightyear continued to make payments under the SAAO until May 2004.  On June 20th, 2004,

the date that payment under the Contract for May usage came past due, ICC claims that it first

discovered that the Debtors no longer intended to honor the Contract.

On June 20, 2003, the Debtors filed a motion for an order establishing auction procedures

for the sale of substantially all of the Debtors' operating assets (the "Sale"). Subsequently, on

July 30, 2003, the Debtors entered into an Asset Purchase Agreement (the "APA") with LY

Acquisition, LLC ("LYA" or the "Buyers"). On October 31, 2003, the Bankruptcy Court entered

an order approving the Sale. The initial closing of the sale occurred on November 18, 2003, and

the final closing occurred on March 31, 2004.

Section 5.2(d) of the APA required the Buyers to designate within ninety days of the

initial closing date (November 18, 2003) the executory contracts of the Debtors that the Buyers

intended the Debtors to assume and assign to the Buyers pursuant to Section 365 of the

Bankruptcy Code. The Buyers did so on February 23 and 29, 2004.  On January 5, 2004, the

Debtors filed their First Amended Liquidating Plan of Reorganization (the "Plan"). Section

VI.A. of the Plan, entitled "TREATMENT OF EXECUTORY CONTRACTS AND

UNEXPIRED LEASES. A. Executory Contracts and Unexpired Leases to be Rejected,"

provided just what its title indicates:

Any executory contracts or unexpired leases of the Debtors that (1) have not been
assumed by the Debtors with the approval of the Bankruptcy Court, (2) are not
the subject of pending motions to assume and assign at the Effective Date, or (3)
are not designated by LYA as executory contracts or unexpired leases to be

4

> assumed and assigned to LYA, pursuant to the [APA], a schedule of which executory contracts or unexpired leases will be filed with the Bankruptcy Court upon such designation by LYA . . . will be deemed to have been rejected by the Debtors as of the Effective Date.  The Plan will constitute a motion to reject such executory contracts and unexpired leases, and neither the Debtors, the Reorganized Debtors , nor the Designated Person will have any liability thereunder except as specifically provided in the Plan.

The Buyers did not designate the Contract pursuant to section 5.2(d) of the Plan, and the Contract was therefore not assumed and assigned by the Debtors to the Buyers.  Section VI.B. of the Plan provided that non-debtor parties to rejected executory contracts were required to file a Proof of Claim for damages resulting from such rejection (a "Rejection Claim") within thirty days of the Effective Date, which was April 30, 2004. Therefore the last day on which non-debtor parties to a rejected executory contract could file a Rejection Claim was May 30, 2004.

For contracts which may have been assumed by the Debtors post-petition, but which were not assigned as part of the Sale, Section IV.A.1.c.i. of the Plan provided that "requests for payment of Administrative Claims must be Filed and served on the Designated Person no later than 30 days after the Effective Date." As with the Rejection Claims, parties were required to file Administrative Claims by May 30, 2004. On March 31, 2004, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order"). On May 3, 2004, the Debtors filed a Notice of Effective Date of the Debtors Liquidation Plan notifying all parties in interest that the Effective Date occurred on April 30, 2004.

Pursuant to the Confirmation Order and Section V.C.1. of the Plan, Thomas M. Duddy was appointed as the "Designated Person," and was given the authority to act for the reorganized Debtors and collect and hold in trust all assets of the reorganized Debtors for the benefit of the holders of allowed claims against the reorganized Debtors' estates.

Nearly nine months after the Effective Date, ICC filed the ICC Motion, which is the subject of this appeal. After extensive briefing, the Bankruptcy Court held a hearing on the ICC Motion on May 24, 2005. ICC argued that (i) the terms of the SAAO barred the Debtors from seeking the rejection of the Contract, (ii) if the Contract was rejected, ICC's Administrative Claim Motion was still pending, (iii) if the Administrative Claim Motion was not still pending, ICC should be permitted to file an administrative claim because its delay was the result of "excusable neglect," and (iv) Debtors and their counsel, Frost Brown Todd, LLC ("Frost Brown Todd") should be held in contempt for violating the SAAO and the directives of the Bankruptcy Court by affirmatively seeking to reject the Contract. The Bankruptcy Court overruled the ICC Motion in its entirety, and entered an amended order detailing its reasons for overruling the motion (the "Amended Order"). In the Amended Order, the Bankruptcy Court found the following:

2.     Executory contracts that were not specifically assumed by the Debtors and assigned to the Buyers were deemed rejected by the Plan (Docket No. 874), as confirmed by this Court in the Confirmation Order (Docket No. 974).

3.     There was no legal requirement for the Buyers, as the successful bidder for substantially all of the Debtors' Assets, to purchase and take assignment of the Contract.  Therefore, the Contract remained with the Debtors who were in liquidation and no longer operating their businesses, pursuant to the terms of the Confirmation Order, and pursuant to the Plan the Contract was deemed rejected. [ ]

5.     ICC did not dispute at the Hearing that the Confirmation Order, Plan and a separate notice of bar dates, among other relevant pleadings, were timely and properly filed with the Court and timely and properly served on all parties of record which included ICC.

6.     ICC, who had been actively involved in these chapter 11 cases at different times in these chapter 11 cases, did not have an administrative claim on file at the Administrative Claim Bar Date.

6

7.      ICC failed to present at the Hearing evidence or any facts to support a finding that ICC should be excused from its failure to file such a claim on or before the Administrative Claim Bar Date or the Rejection Damage Claim Bar Date pursuant to Bankruptcy Rule 9006 or otherwise.

8.      ICC alleged no facts, in its pleadings, affidavits or in the statements of its counsel at the Hearing, to support a finding of contempt as to the Debtors, the Debtors' former counsel, Frost Brown Todd LLC, the Designated Person and the Reorganized Debtors, their counsel Stites & Harbison PLLC, the Buyers LY Holdings, LLC, and Lightyear Network Solutions, LLC, and their counsel Sawyer & Glancy PLLC (collectively, the "Respondents"). Accordingly, for the reasons set forth by the Court on the record at the Hearing, the Court hereby finds that none of the Respondents engaged in any misconduct, contemptuous or otherwise, with respect to ICC, and the ICC Motion should be denied with prejudice as to each of the Respondents, their successors, and assigns.

9.      For the reasons articulated by the Court on the record at the Hearing, the Court hereby finds no basis in law or fact for the imposition of sanctions against any of the Respondents, and the ICC Motion should be denied with prejudice as to each of the Respondents, their successors, and assigns.

ICC subsequently filed this appeal, seeking reversal of the entirety of the Bankruptcy Court's decision.

## II.

The district court sits as a court of appellate review for decisions of the bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides that the "district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." The findings of fact of the bankruptcy court are reviewed under the clearly erroneous standard, and conclusions of law are reviewed *de novo*. Fed. R. Bankr. P. 8013, *see City of White Plains, NY v. A&S Galleria Real Estate, Inc. (In re Federated Dep't Stores, Inc.)*, 270 F.3d 994, 999 (6th Cir. 2001). A finding of fact is clearly erroneous when "although there is

evidence to support the finding, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Kalamazoo River Study Group v. Rockwell Intern. Corp.*, 274 F.3d 1043, 1047 (6th. Cir. 2001). A bankruptcy court's denial of administrative expenses should be reviewed for an abuse of discretion. *In re. Gasel Transp. Lines, Inc.*, 326 B.R. 683, 685 (6th. Cir. 2005). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Id.* at 685-86. A bankruptcy court abuses its discretion only when it relies upon clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard. *Id.*

Although the case is quite complex, there are essentially four issues for the Court to resolve in this appeal: (i) whether the Contract was deemed rejected pursuant to the terms of the Plan, notwithstanding the SAAO, (ii) whether the bankruptcy court erred in declining to excuse ICC from failing to file a Rejection Claim or an Administrative Claim on or before the Bar Dates due to excusable neglect, (iii) whether ICC had an Administrative Claim on file prior to the Administrative Claim Bar Date by virtue of its previously filed Administrative Claim Motion, and (iv) whether the bankruptcy court erred in finding that neither the Debtors nor their counsel took any action rising to the level of contempt. The Court will address each in turn.

III.

ICC first argues that the Contract could not have been rejected pursuant to the terms of the Plan, because the language of the SAAO prevented the Debtors from rejecting it. Therefore, any attempt to do so violated the SAAO and was void *ab initio*. This is a misreading of the SAAO. Its language is more nuanced than a flat prohibition on rejection of the Contract.

8

Rather, the SAAO provides that the Debtors "will not move to reject the Contract," which is clearly different than preventing the rejection of the Contract altogether.  The interaction of the SAAO and the Plan is essentially a matter of contract interpretation – that is, whether the terms of the Plan superseded the terms of the SAAO.  The SAAO does not contain language requiring the inclusion of its terms in the Plan.  Thus, the terms of the Plan govern the treatment of the Contract without regard to the terms of the Stipulation.  The binding effect of the Plan, pursuant to 11 U.S.C. § 1141 and relevant case law, precludes the inclusion of the terms of any prior agreement unless that prior agreement contains language requiring its inclusion.  Section 1141(a) of the Bankruptcy Code provides

> the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a).  "The effect of confirmation under the plain language of § 1141(a) is to bind all parties to the terms of a plan of reorganization."  *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir. 1991).  This Court finds the case *Atalanta v. Allen*, 30 F.3d 1055 (9th Cir. 2002) instructive.  In *Atalanta*, the Ninth Circuit addressed a situation where a debtor proposed a plan that was inconsistent with a prior stipulation similar to the one at issue here.  There, the Court distinguished between stipulations that contain language requiring their inclusion in a confirmed plan of reorganization and those without such language.  The court explained that stipulations whose terms provide for their inclusion in a plan may not be disregarded absent special circumstances.  *Id.* at 1059 (referring to *In re Lenox*, 902 F.2d 737 (9th. Cir. 1990)).  However, the court found the rule established in *Lenox* to be less relevant in a

9

situation where the stipulation did not imply that it would survive the confirmation of a plan of reorganization here. *Id.* Our case presents similar facts. Nothing on the face of the SAAO indicates that its terms will survive confirmation of a plan of reorganization. If this was unclear, the time for ICC to object was during the confirmation process, not nine months later. Therefore, the Contract was rejected pursuant to the terms of the Plan, notwithstanding the language of the SAAO.

ICC also argues that the Contract could not have been rejected because the Bankruptcy Court improperly modified a final order in violation of Rule 9024 of the Federal Rules of Bankruptcy Procedure and Rule 60(b) of the Federal Rules of Civil Procedure. Rule 60(b) generally allows the modification of a final order only upon the filing of a motion by the parties seeking the modification. Fed. R. Civ. P. 60(b). It is unclear whether Rule 60(b) applies here. The SAAO does not unambiguously indicate that it is a final order to which Fed. R. Bankr. P. 9024 and by implication Fed. R. Civ. P. 60 would apply. The Bankruptcy Court did not state that the SAAO was a final order and gave no indication at the hearing on the ICC Motion or elsewhere that the SAAO was a final order. ICC has presented no evidence of finality other than its own statements and citations to a brief written by opposing counsel in prior proceedings. This Court is not better situated to interpret the Bankruptcy Court's own orders. Accordingly, this Court will not reverse the Bankruptcy Court's finding.

Furthermore, it seems somewhat unreasonable for ICC to assume that the SAAO would protect the Contract in perpetuity, notwithstanding the clear language to the contrary in the Plan and related documents. The SAAO does not say that its terms would survive the confirmation of a plan. Moreover, the Bankruptcy Court found that the Debtors did not violate the SAAO. Rather, the Bankruptcy Court found that the Contract was rejected by operation of law pursuant

10

to the terms of the Plan, rather than by motion or affirmative action by the Debtors.  Though the Court finds this point somewhat debatable, the Bankruptcy Court is better positioned to interpret its own orders.  This Court agrees with the Bankruptcy Court's decision as to the finality of its own order, and as the order was not final, the Bankruptcy Court was free to modify the SAAO by confirming the Plan.  Confirmation acted to reject the Contract pursuant to the terms of the Plan.

IV.

The next issue is whether the Bankruptcy Court erred in finding no "excusable neglect" in the failure to file a Rejection or Administrative Claim on or before the relevant bar dates.  In *Pioneer Ins. Serv. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993), the Supreme Court established that "the determination as to what sorts of neglect will be considered 'excusable' is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  Further, the Sixth Circuit has stated that "[e]quitable determinations are within the sound discretion of the bankruptcy judge and will not be disturbed absent abuse of discretion."  *Barlow v. M.J. Waterman & Assocs. (In re M.J. Waterman & Assocs.),* 227 F.3d 604, 607 (6th Cir. 2000) (citing *In re Zick*, 931 F.2d 1124, 1126 (6th Cir. 1991)).  Factors that a court may consider in finding excusable neglect include the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.  The Bankruptcy Court touched on each of these factors at the hearing, noting that the Debtors had already entered into a global settlement many months prior to ICC's filing the ICC Motion, and that ICC waited nearly nine months past the bar dates to file the ICC Motion and offered no explanation for the delay.

11

At the hearing, in response to inquiries from the Court, ICC counsel stated "[t]he notices were received.  My client, at that time, wasn't following the cases – the case, because it believed it had a court order protecting it at that time."  Tr. at 36:14-17.  Further, counsel stated "[t]he client, for all practical purposes, disengaged all counsel after the stipulation and order was signed.  I was no longer, as of the May 30th [2004] date, involved in this case."  Tr. at 40:24-41:01.  Finally, ICC admitted "we don't dispute that the notices were sent."  Tr. at 41:08-09.  Since ICC did not dispute its notice of the Plan, its only reason for ignoring the relevant bar dates was its misplaced reliance on the SAAO to protect it, notwithstanding the clear terms of the Plan.  The Bankruptcy Court accurately summarized the situation at the hearing on the ICC Motion.  The Court stated:

> this particular creditor, participant, holder of a contract, selectively chose when to use counsel and when not to use counsel.  And that was a big mistake.  It's unfortunate . . . It's clear to this Court that here we have someone with someone [sic] with some business sophistication who made a conscious choice to try to cut back on attorney fees and decide when to use counsel, when not to . . . the irony of this is that this particular creditor knew how to participate in this case because they did; but then the client apparently chose, for whatever reason, not to participate afterwards.  That was a mistake.  And it was that – their conscious choice and decision, and that mistake could result in them not complying with timely filing administrative claims . . . .

Tr. at 45:10, 45:13-16, 47:06-12.  Moreover, in response to ICC's argument that it believed the SAAO would protect its interests, the Bankruptcy Court stated:

> [i]ts belief was misplaced.  And its belief is a failure.  And it's a shame that they had this believe [sic] because you, obviously have some skills . . . to understand the bankruptcy process.  And if your client made a decision not to participate in the case or not to participate in the plan process, that's a decision your client made – and to their detriment.

Tr. at 36:18-20, 22-25.  This Court finds that the Bankruptcy Court did not abuse its discretion in

finding that ICC's actions did not constitute excusable neglect.[2]

V.

Next, ICC argues that it did not miss the Administrative Claim Bar Date because its prior

Administrative Claim Motion was still pending – that is, when the terms of SAAO were violated,

the Administrative Claim Motion was revived without ICC filing a new claim.[3]  The Bankruptcy

Court did not interpret the SAAO to provide for such an automatic revival of the Administrative

Claim motion.  This Court will show deference to the Bankruptcy Court's interpretation of its

own orders.  The Court finds no error in the determination that ICC did not have an

administrative claim on file as of the May 30th, 2004 bar date.

ICC also argues that the SAAO constituted a post-petition agreement and that, as such, it

was not subject to rejection and provided an independent right to an administrative claim.  The

Court is similarly unpersuaded on this issue.  The SAAO does not suggest either an assumption

by the Debtors of the Contract or an entirely new, post-petition contract.  The Bankruptcy Court,

which crafted the SAAO, did not believe that it was so intended.  This Court finds insufficient

evidence that the parties intended to establish a new agreement or that the Debtors intended to

assume the Contract.  Surely, if the SAAO was intended to apply in perpetuity, experienced

counsel for ICC would have insisted on clear language saying so, because of the binding nature

---

[2] ICC objects to the portion of the Amended Order that states that ICC "failed to present at the Hearing evidence or any facts to support a finding that ICC should be excused from its failure to file . . . ."  ICC argues that it did indeed present evidence to that effect, and the Bankruptcy Court committed reversible error by stating that ICC "failed to present  . . . evidence or any facts . . . ."  This argument is without merit, as the hearing transcript makes clear that the Bankruptcy Court meant that it did not consider the evidence that ICC did present sufficient to support a finding of excusable neglect.  The wording of the Amended Order certainly does not constitute reversible error.

[3] ICC alternatively argues that its failure to file an administrative claim was the result of excusable neglect.  As noted in Section II.B. of this memorandum opinion, the Court finds no abuse of discretion by the Bankruptcy Court on the issue of excusable neglect.

13

of confirmed plans under section 1141 of the Bankruptcy Code.  The Court agrees with the Bankruptcy Court that the SAAO was not a post-petition agreement.  Accordingly, it was both subject to rejection under section 365 of the Bankruptcy Code and did not provide an independent right to an administrative claim.

Finally, ICC argues that its administrative claim did not accrue until the Debtors ceased making payments under the SAAO.  The Court does not dispute that ICC did not suffer any actual financial loss until the date it stopped receiving payments from the Debtors.  However, ICC was on notice of any claims it might have had relating to the Contract and the SAAO by virtue of the Plan and related documents.  It was simply unreasonable for ICC to sit on its claims in the face of the unambiguous language of the Plan.

VI.

ICC argues that the Bankruptcy Court erred in not finding the Debtors and their counsel in contempt based on their actions in relation to the Plan.  ICC essentially argues that a finding of contempt was mandated because Debtors and their counsel violated the terms of the SAAO.

The Bankruptcy Court has the power to issue civil contempt orders under section 105 of the Bankruptcy Code, which provides in relevant part that a court "may issue any order, process, or judgment that is necessary or appropriate to carry the provisions of this title."  11 U.S.C. § 105(a).  *See also Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 384 (6th Cir. 2001) ("The Courts' powers under § 105 are 'discretionary'"); *In re Cordle*, 187 B.R. 1, 5 (Bankr. N.D. Cal. 1995) ("sanctions under § 105(a) are discretionary rather than mandatory").  Here, the Bankruptcy Court found that the Debtors and their counsel did not violate the SAAO because they did not engage in affirmative conduct to reject the Contract – rather, the Contract was rejected by operation of law pursuant to the terms of the Plan and as a result of the decision by

14

the Buyers as to which executory contracts the Debtors would assume and assign to the Buyers. Although this Court believes the Bankruptcy Court's interpretation of the SAAO is a reasonable one, a finding of contempt would not be mandated even if there were a violation of the SAAO. The issuance or denial of a contempt order is reviewed for abuse of discretion. *See In re Rajotte*, 81 Fed. Appx. 29 (6th Cir. 2003); *In re Kisserbeth*, 273 F.3d 714, 720 (6th Cir. 2001).  The Bankruptcy Court stated at the hearing on the ICC Motion that "there's nothing that even comes close to contempt in this case . . . ." as to Frost Brown Todd.  Further, the Court stated in the Amended Order that ICC

> alleged no facts, in its pleadings, affidavits, or in the statements of its counsel at the Hearing, to support a finding of contempt as to the Debtors . . . Frost Brown Todd LLC, the Designated Person and the Reorganized Debtors, their counsel Stites & Harbison PLLC, the Buyers LY Holdings, LLC, and Lightyear Network Solutions, LLC, and their counsel Sawyer & Glancy PLLC.

The Court also stated in the Amended Order that it found "no basis in law or fact for the imposition of sanctions against any of the Respondents."  This Court finds no abuse of discretion in the Bankruptcy Court's holding.

Therefore, for all of the reasons discussed in this opinion, the Court will affirm the judgment of the Bankruptcy Court in its entirety.  The Court will issue an order consistent with this Memorandum Opinion.

cc:     Counsel of Record

15